# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ESTATE OF JOSEPH MAGLIOLI, *et al.*<br><br>PLAINTIFFS,<br>v.<br>ANDOVER SUBACUTE REHABILITATION CENTER I, *et al.*<br><br>DEFENDANTS.<br><br>ESTATE OF WANDA KAEGI AND VICTOR KAEGI, *et al.*<br><br>PLAINTIFFS,<br>v.<br>ANDOVER SUBACUTE REHABILITATION CENTER I, *et al.*<br><br>DEFENDANTS. | Civ. No. 21-2114 (KM)(JBC)<br><br>Civ. No. 21-2120 (JM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

These related actions concern state-law claims of negligence, wrongful death, and medical malpractice of behalf of residents and patients at Defendants' nursing care facilities regarding Defendants' allegedly substandard response to the COVID-19 outbreak. Plaintiffs initially filed these actions in New Jersey State Court. Defendants then removed the matters under 28 U.S.C §§ 1441 and 1442, contending that (1) Plaintiffs' claims were preempted by the Public Readiness and Emergency Preparedness ("PREP") Act and (2) Defendants were entitled to a federal forum as "federal officers" or the equivalent. (6605 Action DE 1; 6985 Action DE 1.)[1] On August 12, 2020, I

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

remanded both actions to the Superior Court of New Jersey, Sussex County (the "Remand Order"), concluding, *inter alia*, that, while the PREP Act may limit the range of what Plaintiffs can sue for, it does not preclude all state law claims. (6605 Action DE 19, DE 20; 6985 Action DE 14, DE 15.) In so holding, I found that the PREP Act leaves room for ordinary claims of negligent care in a state court forum. (6605 Action DE 19; 6985 Action DE 14.) Additionally, I rejected Defendants' argument that they were "acting under" a federal officer or agency in complying with federal regulations while operating privately owned nursing facilities. (*Id.*) On September 9, 2020, Defendants filed a Notice of Appeal regarding that Remand Order. (6605 Action DE 24; 6985 Action DE 19.)

On January 8, 2021, the United States Department of Health and Human Services ("HHS") issued Advisory Opinion 21-01 ("AO 21-02") holding that (1) the PREP Act is a "complete preemption" statute and that, when it applies, it triggers exclusive federal jurisdiction; and (2) the Fourth Amendment to the HHS Secretary's Declaration Under the [PREP] Act for Medical Countermeasures Against COVID-19 "provides the underlying basis for invoking the *Grable* doctrine[2] with respect to all claims for loss caused by,

---

"DE" = Docket entry number.

"6605 Action" = *Maglioli et al. v. Andover Subacute Rehabilitation I et al.*, Civ. No. 20-6605-KM-ESK

"6985 Action" = *Kaegi et al. v. Scheinbaum et al.*, Civ. No. 20-6985-KM-ESK

"2114 Action" = *Maglioli et al v. Andover Subacute Rehabilitation Center I et al.*, Civ. No. 21-2114-KM-JBC

"2120 Action" = *Kaegi et al v. Andover Subacute Rehabilitation Center I et al*, Civ. No. 21-2120-KM-JCB

"5506 2AC" = The Second Amended Complaint filed by Plaintiffs in 20-cv-6605 (DE 1-1), which is duplicated in 21-cv-2114 (DE 1-3)

"6985 AC" = The Amended Complaint filed by Plaintiffs in 20-cv-6985 (DE 1-1), which is duplicated in 21-cv-2120 (DE 1-2)

[2]     *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005) (recognizing that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.")

arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." HHS, Office of the General Counsel, "Advisory Opinion No. 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision" (Jan. 8, 2021), available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

On February 8, 2021, Defendants filed successive notices of removal, contending that AO 21-02 is "new controlling authority which unequivocally confers federal jurisdiction to the underlying claims." (2114 Action DE 1; 2120 Action DE 1.) On March 10, 2021, Plaintiffs filed motions to remand the actions to state court. (2114 Action DE 7; 2120 Action DE 7.) On May 28, 2021, Defendants filed a motion to stay the actions until the United States Court of Appeals for the Third Circuit resolves their appeal of the August 12 Remand Order. (2114 Action DE 20; 2120 Action DE 19.)

Defendants rely on the United States Supreme Court's recent decision in *BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021) which, they contend, requires Courts of Appeal to review a district court's entire remand order when a defendant relies on 28 U.S.C. §§ 1442 or 1443 as a basis for removal. (*Id.*) Defendants submit that, under *BP*, the Third Circuit will review the entirety of the August 12 Remand Order, including the issues of complete preemption under the PREP Act. (*Id.*) Thus, Defendants contend, because the same issues before this Court on Plaintiffs' second remand motions are the same as those issues presently before the Third Circuit on the appeal of this Court's initial Remand Order, a stay of the pending remand motions is warranted.

For the reasons provided herein, I will grant Defendants motion and stay the current proceedings.

## I.  Summary

### a.  Factual Allegations

The factual allegations were detailed in this Court's August 12 Opinion. I quote that summary, but recount only those facts pertinent to resolution of Defendants' stay motions:

> The allegations of the complaints arise from the treatment of residents at two nursing facilities in Andover, New Jersey. "Defendant Andover Subacute Rehabilitation Center I is located at: 1 Obrien Lane, Lafayette Township, NJ 07848." (6605 2AC ¶ 3) "Defendant Andover Subacute Rehabilitation Center II is located at:  99 Mulford Road, Lafayette Township, New Jersey 07848." (Id. ¶4) "Defendant Alliance Healthcare is a New Jersey domiciled company, with a business address at:1382 Lanes Mill Road, Lakewood, New Jersey 08701, USA, and is owned and/or operated by Defendant Chaim 'Mutty' Scheinbaum and Defendant Louis Schwartz." (Id. ¶ 6)

> Plaintiffs were all residents or patients at Defendants' facilities and died while in their care, allegedly as a result of Defendants' failure to exercise due care with respect to coronavirus infections. (Id. ¶ 2)

> . . .

> On March 26, 2020, the Andover Centers fell victim to a COVID-19 outbreak. (Id. ¶ 12) Nevertheless, Plaintiffs allege, "Defendants failed to take the proper steps to protect the residents and/or patients at their facilities from the Covid-19 virus." (Id. ¶ 13) Management, say Plaintiffs, at first provided only a limited number of masks to employees of the facilities, restricting them to the registered nurses. (Id. ¶ 14) Meanwhile, others who interacted with residents and patients, such as housekeepers, therapists, and nursing assistants, were not provided masks. (Id.)

> Plaintiffs more generally allege, however, that Defendants are liable for failing to observe a wide range of appropriate safety precautions, specifically:

> failing to monitor outside visitors to the facilities, failing to monitor food preparation and distribution, failing to monitor employees, and failing to monitor other residents, etc., when the same were dealing with the residents and/or patients at the facilities in order to prevent the spread of the Covid-19 virus therein; furthermore, said Defendants breached their duty to

Wanda Kaegi, Stephen Blaine and the residents and/or patients at the Andover Subacute Rehabilitation Centers I and II by failing to have (or implement) proper protocols and procedures, and/or failing to have or provide personal protective equipment, in place for the prevention of the spread of the Covid-19 virus, and/or by failing to properly execute existing protocols and procedures set in place to prevent the spread of the Covid-19 virus.

Joseph Maglioli died on April 9, 2020, and Dale Petry died on April 15, 2020, both from COVID-19 infections. (Id. ¶ 15) Wanda Kaegi died on May 2, 2020 and Stephen Blaine died on April 11, 2020, both from COVID-19 infections. (6985 AC ¶ 15) The complaints allege that at least 50 other patients were infected at the Andover facilities and died as a result of COVID-19. (6605 2AC ¶ 16; 6985 AC ¶ 16) Plaintiffs attribute all of these deaths to the Andover facilities' failure to take proper protective measures. (Id. ¶ 17)

The complaints assert the following claims:

**Count 1**: Negligence – Wrongful death as to all known Defendants

**Count 2**: Negligence – Wrongful death as to all fictitious Defendants who remain unknown.

**Count 3**: Negligence – Medical Malpractice as to all unknown doctors, nurses, and medical professionals licensed in New Jersey who treated Plaintiffs.

**Count 4**: Negligence as proximate cause of incident/injury

**Count 5**: Punitive Damages

(6605 Action DE 19 at 2-5; 6985 Action DE 14 at 2-5.)

### b. Procedural History

The procedural posture of these matters is a bit unusual. As explained above, Plaintiffs initially brought these actions in state court and Defendants removed them to federal court. On August 12, I granted Plaintiffs' motions for remand. Following that order, Defendants stated their intention to file an appeal and requested a thirty-day stay of enforcement of the remand order (6605 Action DE 21; 6985 Action DE 16), which I granted (6605 Action DE 22; 6985 Action DE 17). After Defendants filed their Notices of Appeal (6605 Action

DE 24; 6985 Action DE 24), I granted their request for a continued stay (6605 Action DE 27; 6985 Action DE 22). I later extended the stay through October 21, 2020. (6605 Action DE 31; 6985 Action DE 26.) On October 22, 2020, the remand order was executed (6605 action DE; 6985 32; Action DE 27) and the federal-court cases were terminated. Defendants did not request a further stay, either in this court or in the Third Circuit.

Thereafter, Defendants filed new notices of removal, notwithstanding that an appeal of the initial Remand Order remained pending in the Third Circuit. Plaintiffs then filed motions to remand, which remain pending before this Court. As of this writing, Defendants' appeal of the initial Remand Order is fully briefed, and the Third Circuit has scheduled oral argument for June 23, 2021. Presently before the Court are Defendants' motions to stay Plaintiffs' pending remand motions until the Third Circuit adjudicates Defendants' appeal.

## II. Discussion

### a. Legal Standard

District courts have "broad discretion to stay proceedings as an incident to [the] power to control [their] own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) ("Federal courts have inherent power to control their dockets by staying proceedings."). Further, a stay of proceedings "is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court." *MEI, Inc.*, 2009 WL 3335866 at *4. Factors justifying a stay in such circumstances include "the interests of justice and judicial economy," which in turn include "avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources." *Id.* at *5 (internal quotation marks omitted) (quoting *Miccosukee Tribe of Indians v. South Florida Water Mgmt.*

*Dist.*, Civ. No. 98–06056, slip op. at 6 (S.D.Fl. Mar. 28, 2007), appeal denied, 559 F.3d 1191 (11th Cir.2009)).

In the context of a stay pending appeal, the equitable factors governing the issuance of preliminary injunction guide the court's judgment. *Nken v. Holder*, 556 U.S. 418, 434 (2009) Those equitable factors are:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (line breaks added for clarity)). *Accord Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

As the Supreme Court noted in *Nken*, "[t]he first two factors of the traditional standard are the most critical." *Id.* And, in *Reilly v. City of Harrisburg*, the Third Circuit clarified that if first two "gateway factors" are satisfied, then the court may balance the remaining factors in its equitable discretion:

> [W]e follow our precedent that a movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017).

### b. Prudential Considerations Warrant a Discretionary Stay

Defendants submit that prudential considerations warrant the Court's exercising its discretion to stay the proceedings pending the Third Circuit's

review of the initial Remand Order. (2114 Action DE 20-1 at 10; 2021 Action DE 19-1 at 10.)

Generally, appellate courts lack the power to review a district court's order remanding a case to state court. *BP*, 141 S. Ct. at 1536. There are, however, two exceptions: appellate review is permitted for cases removed pursuant to 28 U.S.C. § 1443 (civil rights removal statute) and 28 U.S.C. § 1442 (federal officer removal statute). *Id.*; *see also* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."

In *BP*, the Supreme Court addressed the narrow procedural issue of whether "28 U.S.C. § 1447(d) permit[s] a court of appeals to review *any* issue in a district court order remanding a case to state court where the defendant premised removal in part on the federal officer removal statute, § 1442, or the civil rights removal statute, § 1443." 141 S. Ct. at 1536 (emphasis added). Answering that question affirmatively, the Court held that "when a district court's removal order rejects all of the defendants' grounds for removal, § 1447(d) authorizes a court of appeals to review each and every one of them." *Id.* at 1538.

Defendants submit that because the Third Circuit will now review the entirety of the Remand Order in light of *BP*, the issues before the appellate court and the issues before this Court on Plaintiffs' pending remand motions are the same: *i.e.*, whether the PREP Act triggers exclusive federal jurisdiction over Plaintiffs' claims. Therefore, Defendants contend, this Court should exercise its discretion to stay proceedings pending the outcome of the Third Circuit's decision, which will very likely dictate the outcome of Plaintiffs' pending motions. (2114 Action DE 20-1 at 10; 2021 Action DE 19-1 at 10.)

In contrast, Plaintiffs submit that (1) Defendants cannot now seek a stay because they failed to do so before the Third Circuit and (2) the pending

remand motions present procedural questions regarding the propriety of Defendants' second removal that are not now before the Third Circuit. (2114 Action DE 21 at 12; 2120 Action DE 20 at 12.)

Those additional procedural questions include:

(1) Whether Defendants have sufficiently demonstrated an "other paper" within the 30-day window provided for under 28 U.S.C. § 1446(b)(3) that would allow this second removal to be considered on its substantive merits.

(2) Whether Defendants can base a second removal asserting an affirmative defense on theories of ordinary preemption that, in the spring and summer of 2020, were expounded upon by the same source they now rely on as having issued the "other paper," purportedly opening Section 1446(b)(3)'s second window for removal.

(*Id.*)

Defendants have the better argument on the stay. It is within a district court's "inherent powers" to stay proceedings in the exercise of "sound discretion." *MEI, Inc.*, 2009 WL at 4. The exercise of such power is "particularly appropriate" where the outcome of another case "may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court." *Id.* at *4 (quoting *Bechtel Corp. v. Local 215, Laborers' Int'l Union of North America*, 544 F.2d 1207, 1215 (3d Cir.1976)). The court acknowledged that "a discretionary stay, while appropriate, must be 'kept within the bounds of moderation.'" *Id.* at *5 (quoting *Landis*, 299 U.S. at 256). However, *MEI* found such discretionary stay to be warranted because the outcome of an appeal could have rendered a pending summary judgment motion a nullity. *Id.* It reasoned that for it to "expend the effort to wade through the parties' voluminous submissions and to reach a decision that may ultimately be set aside is a waste of precious resources-both for the Court and for the litigants." *Id.* Therefore, the court found that a discretionary stay was warranted and suspended further consideration of JMC's summary judgment motion. *Id.* To ensure that the stay was appropriate in scope, the *MEI* court held that:

> 1) the stay will terminate after one year from the date of the accompanying Order and upon an application to reinstate the case to the active docket by either the Plaintiff or the Defendants, or 2) the stay will terminate upon the Federal Circuit's decision and upon an application to reinstate the case to the active docket by either the Plaintiff or the Defendants, whichever condition occurs sooner.

*Id.*

Not *all* of the issues pending before this Court are currently before the Third Circuit. The ultimate issue of whether the PREP Act confers exclusive jurisdiction over these actions, however, is before the appellate court. The outcome of Defendants' appeal will fundamentally affect the outcome of Plaintiffs' pending motions to remand. In the interest of avoiding "inconsistent results, the duplication of efforts, and the waste of judicial resources," I find a discretionary stay is warranted. *See id.* (internal quotation marks omitted) (quoting *Miccosukee Tribe of Indians*, No. 98–06056, slip op. at 6).

In addition, I analyze the traditional equitable factors, which reinforce my conclusion that a stay is appropriate.

### c. The Four Equitable Factors Warrant a Stay

### i. Likelihood of Success on the Merits

Defendants' likelihood of success on appeal is sufficient to warrant a stay under the circumstances.

Any litigant faces an uphill battle in attempting to convince a trial court that its judgment is likely to be overturned; if the trial court thought so, it would not have decided that case as it did. Here, however, some particular factors are in play. First, the scope of the PREP Act's preemptive effect presented a somewhat novel and debatable set of issues. Second, in light of *BP*, a jurisdictional barrier to the Third Circuit's review has been removed. Third, HHS has now issued an advisory opinion that, while not controlling, does directly address whether the PREP Act triggers exclusive federal jurisdiction over Plaintiffs' state law claims and, in addition, whether the *Grable* doctrine supports federal jurisdiction over Plaintiffs' claims.

In the August 12 Remand Opinion, I concluded that the PREP Act does not wholly "occupy the field," and that it left room for certain negligence and malpractice claims. (6605 Action DE 19 at 18; 6985 Action DE 14 at 18.) Additionally, I found significant the distinction between claims arising from the *administration* of certain COVID-19 countermeasures and claims arising from the negligent *failure* to take such countermeasures. (*Id.* at 19)

In AO 21-01, however, HHS opined that the PREP Act is a complete preemption statute. AO 21-01 at 2. Further, HHS advised against a narrow interpretation of "administration" that does not encompass the failure to employ a covered countermeasure. *Id.* at 1-2. Additionally, HHS invoked *Grable* doctrine, stating that it creates federal jurisdiction "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," because "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." *Id.* at 4-5.

Defendants may or may not prevail on appeal, but I find that they have demonstrated a likelihood of success on the merits of their appeal that is sufficient to warrant a stay.

Plaintiffs submit that Defendants' successive notices of removal raise procedural issues. While that may be so, it does not appreciably alter the picture. Whether in relation to the first or second removal, Defendants may cite the HHS advisory opinion as persuasive authority. Given that the appeal is well on its way to resolution, the better course is to wait to see what weight and effect the appellate court gives that advisory opinion, rather than risk inconsistent rulings.

### ii. Irreparable injury absent a stay

Harm is considered "irreparable" if it is not redressable by money damages later, in the ordinary course of litigation. *Instant Air Freight Co. v. C.F.*

*Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1964)). Defendants submit that it will suffer irreparable harm if this Court does not grant the stay because (1) they may then have the burden of simultaneously litigating the same issues in multiple jurisdictions and (2) they may be exposed to inconsistent outcomes. (2114 Action DE 20-1 at 14; 2021 Action DE 19-1 at 14.)

Defendants cite to a decision from the Eastern District of Missouri, *Dalton v. Walgreen Co.*, No. 13-603, 2013 WL 2367837 (E.D. Mo. May 29, 2013). There, the defendant sought a stay of the district court's remand order pending appellate review of that order. *Dalton*, 2013 WL 2367837 at *1. In assessing the four equitable factors, the *Dalton* court found persuasive "the likelihood that Defendant will be irreparably harmed by the burden of having to simultaneously litigate the[] cases in state court and on appeal to the Eighth Circuit, as well as the potential of inconsistent outcomes if the state court rules on any motions while the appeal is pending." *Id.* at 2; *see also Brinkman v. John Crane, Inc.*, No. 14-142, 2015 WL 13424471, at *1 (E.D. Va. Dec. 14, 2015) ("With respect to the second factor, irreparable injury to Defendants, the district court should enter a stay 'where failure to enter a stay will result in a meaningless victory in the event of appellate success.' Here, if a stay is not granted, Plaintiffs and Defendants face the 'burden of having to simultaneously litigate [the case] in state court and on appeal to the [Fourth Circuit], as well as the potential of inconsistent outcomes if the state court rules on any motions while the appeal is pending.'") (quoting *Dalton*, 2013 WL 2367837 at *2.).

I find that authority persuasive, especially in this context, where the Third Circuit will decide whether state courts have the authority to hear Plaintiffs' claims at all.[3] Therefore, I find the second factor is satisfied.

---

[3] Plaintiffs do not dispute that the burden of simultaneous litigation and the potential for inconsistent outcomes constitutes irreparable harm. (*See* 2114 Action DE 21 at 16; 2120 Action DE 20 at 16.) Instead, Plaintiffs submits that the standard in the Eastern District of Virginia considers the first two preliminary injunction factors the most critical to a stay analysis whereas the Third Circuit considers all factors

### iii. Potential injury to non-movants

The only potential harm to Plaintiffs is a delay of proceedings while the Third Circuit considers Defendants' appeal. However, Plaintiffs concede that delay alone, which is inherent in any stay, is insufficient to establish prejudice. (2114 Action DE 21 at 17; 2120 Action DE 20 at 17 (citing *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-00785, 2011 WL 5416058, at *4 (D.N.J. Nov. 4, 2011) ("The mere fact that additional time will pass does not establish prejudice to the Plaintiff.")). Instead, Plaintiffs cite to the potential for "fading memories" of witnesses. (*See id.* citing *Coloumbo*, 2011 WL 5416058 at *4 ("To establish prejudice, the plaintiff must show a unique injury such as fading memories, asset dissipation, or an attempt to gain an unfair advantage from the stay.")). However, oral argument before the Third Circuit is days away. (2114 Action DE 22 at 4; 2120 Action DE 21 at 4.) Even factoring in a reasonable amount of time for the Court of Appeals to render its decision, the fear of "fading memories" is not a weighty factor.

### iv. Public interest

Finally, the public interest weighs in favor of a stay. The Third Circuit's ruling regarding the application of the PREP Act to injuries arising from the COVID-19 pandemic and the healthcare systems' response, or lack of response, to the same is of national importance. Actions similar to this one have been

---

equally important. (*Id.*) That is a mischaracterization of the law in this Circuit, as the *Reilly* Court explained:

> [D]isallowing a district court from balancing the four factors is inconsistent with the Supreme Court's *post-Winter* instruction in *Nken* that, when evaluating whether interim equitable relief is appropriate, "[t]he first two factors of the traditional standard are the most critical." An *Opticians Association of America* standard—in which all four factors are effectively critical in equal recourse—is logically incompatible with *Nken*'s unambiguous holding. What would be the point of creating two gateway factors by placing elevated value on them if all are equally imperative? There would be none. And to require a moving party to prevail on all factors reads out balancing when not all factors favor that party.

858 F.3d at 179.

filed throughout the country. Even within this Circuit, there is the danger of conflicting rulings. Therefore, I find the public interest weighs in favor is a stay.

### III.    Conclusion

For the reasons set forth above, I will grant Defendants' motions (2114 Action DE 20; 2120 Action DE 19) to stay Plaintiffs' motions to remand (2114 Action DE 7; 2120 Action DE 7) pending the outcome of Defendants' appeal of the August 12 Remand Order. To ensure appropriateness of scope, the stay will terminate on the earlier of

(1) one year from the date of the accompanying Order and upon the grant of an application to reinstate the case to the active docket by either the Plaintiffs or the Defendants, or

(2) the Third Circuit's issuance of a mandate and upon an application to reinstate the case to the active docket by either the Plaintiff or the Defendants.

An appropriate order follows.

Dated: June 18, 2021

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**